IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| La Verne Swift, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cv. No. 3:12-cv-01140 |
| ) | District Judge Sharp/Magistrate Judge |
| The Christian Broadcasting Network, Inc. ) | Brown. |
| ) | |
| Defendant. ) | |

**To the Honorable District Judge Kevin H. Sharp**

## REPORT AND RECOMMENDATION

Presently pending before the Magistrate Judge is Defendant's, The Christian Broadcasting Network ("CBN"), Motion for Summary Judgment. (Docket Entry ("DE") 31) As explained in detail below, the Magistrate Judge recommends that the defendant's Motion for Summary Judgment be **GRANTED**, the plaintiff's claims be **DISMISSED**,[1] and all other outstanding motions be **TERMINATED** as **MOOT**.

## I. INTRODUCTION AND BACKGROUND

CBN is a tax exempt non-profit corporation, qualified under 26 U.S.C. § 501(c)(3), that engages in religious and philanthropic activities worldwide. (Plaintiff's Memorandum in Support of Summary Judgment, DE 49, p. 4) As part of its religious enterprise, CBN operates call centers in Tennessee and Virginia. (Defendant's Memorandum in Support of Summary Judgment ("CBN Br."), DE 32, p. 3; Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl. R."), DE 45, p. 4) Plaintiff La Verne Swift ("Plaintiff") was hired by CBN in its

---

[1] Plaintiff filed a motion for summary judgment that was nearly six weeks beyond the deadline for dispositive motions. (DE 49) Further, this motion is essentially a restatement of Plaintiff's response to CBN's motion rather than a true motion for judgment as a matter of law on Plaintiff's claims. As such, the Magistrate Judge has relied on it as additional support for Plaintiff's motion in opposition to summary judgment.

Tennessee call center on August 9, 2004 as a Partner Service Representative 2 ("PSR"). (CBN Br., DE 32, p. 3)

PSRs take phone calls from individuals "experiencing life crises, including illness, death, divorce, loss of jobs, family concerns, and similar issues." (CBN Br., DE 32, p. 2) Among other things, PSRs "pray with callers, offer literature [that is crisis appropriate] (Pl. R., DE 45, p. 2), and provide support for CBN's many members. (CBN Br., DE 32, p.2) In addition to providing spiritual support to callers, PSRs are required to solicit donations through their contact with members of the public to help fund CBN's philanthropic and religious enterprises. (CBN Br., DE 32, p. 2; Pl. R., DE 45, p. 2) Phone calls received by PSRs are subject to a detailed 28 point quality metric and are heavily scripted. (Exh. F to Pl. R., DE 45-6, p. 2; Exh. A to CBN Br., DE 32-2, pp. 1-8; DE 32-3, pp. 1-9). PSR interactions with callers are routinely monitored to ensure call quality, conformance with the CBN guidelines, and as a means to provide PSR performance evaluations and critical feedback. (CBN Br., DE 32, p. 3; Exh. A to CBN Br., DE 32-2 & 3)

Plaintiff completed PSR training on August 20, 2004 and was initially successful with CBN's "Six Essential" criteria to ensure a successful phone ministry. (Exh. A to Pl. R., DE 45-1, p. 2; 45-6, pp. 2-5; Exh. A to CBN Br., DE 32-1, p. 6; DE 32-2, pp. 1-8; DE 32-3, pp. 1-5) Plaintiff received a "Certificate of Call Excellence [for] Outstanding Performance and scoring a 96%" during her work on the CBN 700 Club campaign in November of 2004. (Exh. A to Pl. R., DE 45-1, p. 3) She received a "Certificate of Call Excellence for Outstanding Call Quality and scoring a 96" in August of 2005 and an "Excellence Award for Outstanding Call Control for scoring a 98.75%" in November of 2005. (Exh. A to Pl. R., DE 45-1, pp. 4-5) Plaintiff was also awarded "Jean/Casual" passes allowing her to wear blue jeans on days other than Friday in

February and April of 2005. (Exh. B to P. R., DE 45-2, pp. 18-19) Despite these successes, Plaintiff's later job performance was considered sub-par by her direct supervisors.

Plaintiff's job evaluation report from August of 2006 reveals that she received an unsatisfactory performance rating because "she [was] not functioning at full potential, [was] not cooperative when issues [were] addressed and is seemi[ngly] non responsive by responses and attitude." (Exh. B to CBN Br., DE 32-5, p. 2) This sub-par score was due to plaintiff's poor fundraising, her lack of teamwork, her rigid and intractable attitude, and lack of initiative. (Exhibit B to CBN's Br., DE 32-4, pp. 9-10) Plaintiff refused to sign this evaluation. (Exh. B to CBN Br., DE 32-5, p. 2)

The only award Plaintiff received during 2006 was for "Fundraising Excellence" for successfully soliciting over $11,000.00 during the 700 Club campaign. (Exh. D to Pl. R., DE 45-4, p. 2) However, Plaintiff's job performance evaluation for 2007-08 shows that she continued to struggle with fundraising and began having issues with punctuality and absenteeism. (Exh. B to CBN Br., DE 32-5, pp. 3-6) Plaintiff's pledge solicitations during that time were 35% below average and her dollars raised per call was 23% below average. (Exh. B to CBN's Br., DE 32-5, p. 4) Although Plaintiff requested time off in October of 2007 and March of 2008, she was also cited for 13 instances of poor punctuality and absenteeism during the entire year. (Exh. B to CBN's Br., DE 32-5, p. 5)

A corrective action report dated September 8, 2008 shows that Plaintiff was reprimanded for below average work performance despite multiple "coaching sessions" designed to improve her performance.. (Exh. C to CBN's Br., DE 32-5, p. 7) At that time, Plaintiff's supervisors warned her that continued failure to achieve division average fundraising goals would result in a demotion. (Exh. C to CBN's Br., DE 32-5, p. 7) In November of 2008, Plaintiff was in fact

demoted due an inability or unwillingness to solicit contributions or to meet CBN's call quality standards.  (Exh. A to CBN Br., DE 32-1, p. 3-4)

In May of 2010, CBN again issued a corrective action report to Plaintiff citing excessive tardiness and continued inability to achieve fundraising goals as the underlying reasons.  (Exh. B to CBN's Br., De 32-5, p. 8)  Plaintiff had missed work on four occasions and had been tardy on eleven occasions.  (Exh. B to CBN's Br., De 32-5, p. 8)  Further, Plaintiff's supervisor cited instances where Plaintiff hung up on callers, avoided taking calls, or dumped calls—not saying hello so that the caller believed he or she had been disconnected.  (Exh. B to CBN's Br., De 32-5, p. 8)  Despite weekly evaluations of Plaintiff's performance to ensure improvement, a corrective action report issued February 24, 2011 showed that Plaintiff had "achieved compliance regarding quality ministry and partner service only twice in the last twelve months." (Exh. B to CBN's Br., DE 32-5, p. 9)

Five days later, on March 1 2011, Plaintiff's supervisor, Joy Ruark, and CBN's call center Director, Tracy Swager, offered Plaintiff additional instruction and training on her job duties in order to ensure better performance.  (Exh. B to CBN Br., DE 32-5, p. 10)  Further, Ms. Ruark and Ms. Swager explained to Plaintiff that she must improve her quality scores within 30 days and then maintain that quality for an extended period of time or face termination.  (Exh. B to CBN's Br., DE 32-5, p. 10)  Plaintiff's employment with CBN was subsequently terminated on July 25, 2011 for failure to achieve an appreciable increase in call quality performance.  (Exh. A to CBN Br., DE 32-1, p. 5)  The stated reason was that Plaintiff had failed to achieve a score above 84% on CBN's quality control metrics for 14 of the last 17 weeks of her employment as a PSR.  (Exh. A to CBN Br., DE 32-1, p. 4-5)

After her termination, Plaintiff filed charges with the Tennessee Equal Employment Opportunity Commission ("EEOC") alleging that CBN had discriminated against her due to her race in violation of Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241 (July 2, 1964) ("the Act"). (DE 1)  On August 10, 2012, the EEOC issued a Dismissal and Notice of Rights letter which indicated that the EEOC was unable to establish any clear violations of Act, and explained that Plaintiff could bring suit in federal district court to advance her claims there under 42 U.S.C. § 2005e within 90 days. (DE 1) Plaintiff filed the instant matter on November 2, 2012 alleging that CBN had discriminated against her based upon her race, color, sex, religion, and national origin. (DE 1)

According to the complaint, Plaintiff and CBN's other minority PSRs are treated differently than CBN's caucasian employees. (DE 1)  Plaintiff alleges that she was passed over for promotion, was not afforded raises in pay, subjected to different attendance and job performance standards than her non-protected class counterparts, and ultimately fired because of her race, color, sex, religion, and national origin.[2] (DE 1)

## II.  ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Miller v. City of Calhoun County*, 408 F.3d 803, 812-13 (6th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  A "genuine issue of material fact" is one which, if proven, could adduce a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden

---

[2] Although Plaintiff also faults CBN for failing to promote her or to grant her raises in pay, Plaintiff has failed to advance those claims beyond the pleading stage.

5

for establishing the absence of a genuine factual dispute rests with the moving party. *Id.* at 249-50.

In deciding whether summary judgment is appropriate, the District Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for a trial." *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). In so doing, the district court must "draw all reasonable inferences in favor of the non-moving party" in its analysis of the pleadings, affidavits, and other submissions. *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013) (citing *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party is not entitled to trial solely on the basis of the pleadings themselves, but must provide more than conclusory allegations, speculation, and unsubstantiated assertions. *See Lujuan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Rather, at the summary judgment stage, the party opposing summary judgment "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252)

**B. Grounds for decision**

CBN raises three grounds for summary Judgment. (CBN Br., DE 32, pp. 6-11) First, CBN argues that Plaintiff's claims of discrimination based upon color, sex, religion, and national origin must be dismissed because Plaintiff did not raise those claims in her EEOC complaint.

(CBN Br., DE 32, p. 6-7) CBN next argues that it is entitled to summary judgment because Plaintiff cannot meet the burden of establishing a *prima facie* case of discrimination under the Act. According to CBN, Plaintiff was neither qualified for the position from which she was terminated nor was she subjected to different standards than all other PSRs in CBN's employ. (CBN Br., DE 32, pp. 7-11)

Alternatively, even were a jury to find that Plaintiff was qualified for the position from which she was terminated and was subjected to performance scrutiny that was harsher than her non-protected coworkers, CBN argues it is entitled to summary judgment because CBN had a legitimate non-discriminatory reason for terminating Plaintiff's employment. (CBN Br., DE 32, p. 11) CBN's second argument is dispositive of this matter. Moreover, the Magistrate Judge notes that Plaintiff has provided no evidence to support her claims that CBN's expressed motives are simply pretext.

    **1.** *Plaintiff's claims of discrimination based upon color, sex, religion, and national origin*

According to CBN, "[i]n order for federal courts to have subject matter jurisdiction of Title VII claims, the claimant must first successfully pursue administrative relief." *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). (CBN Br., DE 32, pp. 6-7) CBN contends that Plaintiff's claims of discrimination on the basis of color, sex, religion, and national origin must be dismissed because she failed "to file a charge of discrimination with the EEOC and subsequently receive a 'notice of right to sue' letter before" pursuing those claims here. (CBN Br., DE 32, pp. 6-7) CBN's reliance on *Ang* is misplaced.

The Court of Appeals for the Sixth Circuit recently held in *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851 (6th Cir. 2013) that failure to exhaust administrative remedies is not jurisdictional. However, under the Act, receipt of a "right-to sue letter is a condition precedent"

7

to sustaining suit in federal court that can be modified on proper occasions. *Rivers v. Barberton Bd. Of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998).

Equitable tolling requires a plaintiff to show: 1) lack of actual notice of filing requirements; 2) lack of constructive knowledge of filing requirements; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant and others; and 5) reasonableness in remaining ignorant of the notice requirements. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432 (6th Cir. 2007). The burden rests on Plaintiff here to "plead and prove facts supporting equitable avoidance of a timeliness defense." *Hampton v. Caldera*, 58 Fed. Appx. 158 (6 th Cir. 2003) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). Further, it is well settled that "ignorance of the law alone is insufficient to warrant equitable tolling," *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991), and that equitable tolling should be applied sparingly. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Other than stating that her failure to exhaust her claims of discrimination based upon color, sex, religion, and national origin was an oversight, Plaintiff has done nothing to meet this burden. Thus, the Magistrate Judge **recommends** that Defendant's motion to dismiss Plaintiff's claims regarding discrimination on the basis of color, sex, religion, or national origin should be **GRANTED**.

Irrespective of the fact that Plaintiff did not pursue her color, sex, religion, or national origin discrimination claims in the EEOC, Plaintiff has failed to state a *prima facie* case to support any claims of discrimination by CBN against her as discussed below.

> **2.** *Plaintiff was not qualified for the position from which she was fired and was not held to a different standard than other PSRs due to her race*

CBN concedes that Plaintiff is a member of a protected class, an African American, and that she was subjected to an adverse employment action, termination of her employment. (CBN

Br., DE 32, p. 8) However, in defense of Plaintiff's claims, CBN asserts that racial bias played no part in its decision to reprimand Plaintiff and eventually terminate her employment. (CBN Br., DE 32, pp. 7-11) Plaintiff was terminated because she "was not performing her job at a level which met CBN's legitimate expectations" says CBN. (CBN Br., DE 32, p. 9) Plaintiff counters that her performance as a PSR was excellent throughout her employ with CBN and that she, as were all minority PSRs, was subject to a different benchmark than non-protected class members. (Pl. R., DE 45, p. 2)

To establish a *prima facie* case of discrimination under the Act, claims predicated solely on circumstantial evidence must clearly demonstrate that Plaintiff "(1) is a member of a protected class, (2) was qualified for the job at issue, (3) was subjected to an adverse employment action, and (4) was treated differently than a similarly situated non[-]protected person." *Kuhn v. Washtenaw County*, 709 F.3d. 612, 624 (6th Cir. 2013) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Under the Act, when a claimant's qualifications are put at issue in a motion for summary judgment, Plaintiff bears the burden of establishing sufficient evidence for a reasonable jury to find that she "was performing [her] job 'at a level which met [the defendant's] legitimate expectations.'" *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (quoting *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)). Plaintiff "does not raise a material issue of fact on the question of the quality of [her] work merely by challenging the judgment of [her] supervisors." *McDonald*, 898 F.2d at 1160 (quoting *Kaphart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980)).

Thus, to survive CBN's motion for summary judgment, Plaintiff must "point to evidence that, taken in a light most favorable to her, could lead a reasonable jury to" find that she was both qualified as a PSR and subject to a different standard of employment than non-protected class

member PSRs. *Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Plaintiff has failed to meet this burden.

CBN supports its motion for summary judgment with factual data demonstrating Plaintiff's poor work performance. According to the affidavit of Tracy Swager, the Director of the CBN call center where Plaintiff was employed, Plaintiff "received numerous oral and written reprimands for poor work performance . . . rang[ing] from excessive absences and tardiness to failure to meet CBN's work standards for quality." (Exh. A to CBN Br., DE 32-1, p. 3) Plaintiff's job evaluation reports and corrective action reports discussed *supra* at pp. 2-4, provide substantial support for these claims.

Plaintiff argues that the awards she received in 2004 and 2005 raise an issue of material fact on the issue of her job qualification. (Pl. R., DE 45, p. 1, 3) Any evidence supplied by CBN to the contrary is fabrication, aimed at discrediting her personally and cause her additional pain. (Pl. R., DE 45, p. 1-3) According to Plaintiff, hang-ups were common occurrences due to flaws in the computerized phone system, caucasian PSR's were instructed to hang up on callers while minority PSRs were punished for doing so, all PSRs were required to manage calls between 3 and 7 minutes, and all minority PSRs were generally held to a higher standard than their non-minority counterparts. (Pl. R., DE 45, p. 2-5)

Yet, despite the four certificates awarded by CBN to Plaintiff during 2004 and 2005 and a smattering of "Jean/Casual passes" awarded to her during her tenure as a PSR (Exh. A to Pl. R., DE 45-1, pp. 1-11), Plaintiff offers no evidence, either through affidavit or deposition testimony, that the job performance ratings provided by CBN are fabricated, that CBN's computerized phone system was flawed, or that Plaintiff's performance approached CBN's legitimate expectations. (Exhibit A to Plaintiff's Br., DE 45-1, pp. 2-5)

In response to the instant motion, Plaintiff attests to one occasion on which she heard her supervisor, Joy Ruark, instruct caucasian employees to hang up on callers. (Memorandum in Support of Plaintiff's Motion for Summary Judgment, DE 49, p. 3) However, Plaintiff provides no citation to the record in support of her allegations as is required by both Federal Rule of Civil Procedure 56(e) and Local Rule 56.01(b) (collectively "Rule 56"). Further, although she had ample opportunity throughout the discovery period, Plaintiff offers no evidence in the form of affidavits or deposition testimony, as is also required by Rule 56, to support her allegation. Thus, these claims, even in a light most favorable to Plaintiff, amount to nothing more than "personal beliefs, conjecture, and speculation" (*Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986)) that are "[in]sufficient to establish the existence of an element essential to [her] case" and insufficient to meet her burden here. *Lujan*, 497 U.S. at 884 (quoting *Celotex*, 477 U.S. at 322).

Plaintiff's claims of dual standards between minority and caucasian individuals regarding call performance stem from her observations of one similarly situated caucasian PSR on Plaintiff's team, Jim Fisher, whom Plaintiff claims performed deficiently but was not reprimanded. (Pl. Memorandum in Support of Summary Judgment, DE 49, p. 3) However, when questioned on the issue at deposition, Plaintiff admitted that any perceived deficiency in this individual's performance was based solely on Plaintiff's observations. (CBN Br., DE 32, p. 10; Exh. B to CBN Br., DE 32-4, pp. 5, 7) Further, Plaintiff did not know whether this individual had been reprimanded and she failed to support her claims through affidavit or deposition testimony in her defense to the instant motion. (CBN Br., DE 32, p. 10; Exh. B to CBN Br., DE 32-4, pp. 5, 7) Thus, just as with her claims regarding hang-ups, Plaintiff's allegations are insufficient to meet the burden imposed upon her by Rule 56 in this regard.

As to fundraising, Plaintiff acknowledges that she was deficient in soliciting funds from her callers on repeated occasions and that she failed to improve her performance as required. (Pl. R., DE 45, p. 5) Plaintiff argues, rather, that she "was never given a set amount of money to raise in order to remain [employed, or] hired or trained to ask for funds in order to comply with CIP percentages." (Pl. R., DE 45, p. 5) Yet, Plaintiff was given two different benchmarks during her employ with CBN by which to measure her performance and adjust her productivity.

As discussed *supra* at p. 3, Plaintiff was informed during her performance evaluations in 2006 that her pledges were only 35% of expectations, and in 2008 her pledge amounts were 35% below expectations of all PSRs in her division. (Exh. B to CBN Br., DE 32-4, pp. 9; 32-5, p. 4) An individual with an advanced degrees in electrical engineering and education, such as Plaintiff, can surely extrapolate a benchmark when provided this information along with the admonishment that their continued employment hangs in the balance. (Exh. B to CBN Br., DE 32-4, p.2) Nevertheless, Plaintiff fails to point to any evidence in the record—either by affidavit, deposition testimony, or formal CBN policy—that provide even a modicum of support for her claims.

Lastly, as to Plaintiff's tardiness and absenteeism, Plaintiff does not deny that she was absent or late to work on many occasions; rather, she argues that her absences were covered by CBN's policy governing vacation and sick pay, shift swaps with other employees, and a six minute grace period applied to the beginning of each shift. (Pl. R., DE 45, p. 3) Plaintiff also alleges that caucasian employees were not reprimanded for arriving late and were allowed to make up that time at the end of their shifts. (Pl. R., DE 45, pp. 3, 6) Minority employees, however, were not extended that same flexibility according to Plaintiff. (Pl. R., DE 45, pp. 3, 6) Yet, the only proof of these claims offered by Plaintiff are seven time off requests submitted

between 2006 and 2010 and 3 rotation shift swap sheets approved by CBN supervisors during the same timeframe. (Exh. B to Pl. R., DE 45-2, pp. 2-19) This evidence does little to reconcile the nearly 30 absence and tardy reports cited in the record by CBN and further still provides no evidence that caucasian PSR tardiness was overlooked or excused while minority PSR tardiness was punished.

## III. CONCLUSION

The Magistrate Judge finds: 1) that Plaintiff's failed to raise her claims of discrimination based upon her color, sex, religion, and national origin with the EEOC and attain a right-to-sue letter; 2) that Plaintiff has failed to "point to evidence that, taken in a light most favorable to her, could lead a reasonable jury to" find that she was both qualified for the position from which she was terminated and that she was subject to a different standard of employment than non-protected class members; and 3) that Plaintiff has failed to establish a *prima facie* case of discrimination under the Act. *Davis*, 717 F.3d at 491.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the CBN's motion to dismiss Plaintiff's claims for discrimination based upon color, sex, religion, and national origin be **GRANTED**; CBN's motion for Summary Judgment be **GRANTED**; Plaintiff's claims be **DISMISSED** with prejudice, and all other outstanding motions pending be **TERMINATED** as **Moot.**

The parties have fourteen (14) days of being served with a copy of this Review and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections

within fourteen (14) days of receipt of this Review and Recommendation may constitute a waiver of further appeal. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012) (citing *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986)).

**ENTERED** this 22nd day of October, 2013.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge